UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | |
| **EMANUEL GONZALEZ NIEVES** | CASE NO. 18-07215-BKT12 |
| XXX – XX – 7138 | CHAPTER 12 |
| DEBTORS | |

**AMENDED CHAPTER 12 PLAN DATED JULY 1, 2019**

AMENDED CHAPTER 12 PLAN- Dated JULY 1, 2019

The above captioned Debtor EMANUEL GONZALEZ NIEVES by and through the undersigned counsel, hereby submits the following proposed Chapter 12 Plan (the "Plan") pursuant to the provisions of 11 U.S.C. Section 1201, et seq., and specifically to 11 U.S.C. Section 1222.

Pursuant to the provisions of Sections 1222 of the Code, Debtors propose the classification and treatment of claims as hereinafter stated.

Creditors and other parties in interest are urged to read and consider this Plan in its entirety since this represents a proposed legally binding agreement between the Debtors, creditors and parties in interest.

ARTICLE I

DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set forth.

1. "Administrative Creditor" shall mean a person entitled to payment of an Administrative Expense Claim.

2. "Administrative Expense Claim" shall mean any Claim constituting a cost or expense of administration of the Chapter 12 proceedings allowed under 11 U.S.C. Sec. 503(b) and 507(a)(1).

3. "Allowed Claim" shall mean any Claim as allowed pursuant to 11 U.S.C §502. Unless otherwise provided for in this Plan, "Allowed Claim" shall not include interest, cost, fees, expenses or other charges on the principal amount of such Claim from after the Petition Date.

4. "Allowed secured Claim" shall mean any Allowed Claim, which is a Secured Claim and shall include in the amount thereof – unless otherwise stated in this Plan – all interest accrued on or after the Petition Date, fees, costs, and charges as may be allowed.

5. "Bankruptcy Code" or "Code" shall mean the provision of Title 11 of the United States Code, 11 U.S.C. Sections 1201 et seq., as amended from time to time.

6. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Puerto Rico, having jurisdiction over this Chapter 12 proceeding.

7. "Bankruptcy Rules" or "Rules" shall mean the Federal Rules of Bankruptcy Procedures, as amended from time to time.

8. "Bar Date" shall mean the deadline of February 19, 2019 for creditors to file their proof of claims and June 10, 2019 for government proof of claims date after which any proof of claim filed will not have any effect on this Plan and will not entitle its holder to participate with other Claims under this Plan.

9. "Claim" shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10. "Class" shall mean a category of holders of Claims or Interest that is substantially similar to other claims or interest in such Class.

11. "Confirmation Date" shall mean the date the Order of Confirmation in this Chapter 12 proceeding and becomes a Final Order.

12. "Consummation Date" shall mean the date by which all of the conditions precedent to full consummation set forth in this Plan, shall have be met or waived.

13. "Creditor" shall mean any Person (as herein after defined) who has a Claim against the Debtor, which arose on or before the Petition Date or a Claim of any kind specified in 11 U.S.C. Sections 502(g), 503(h) or 502(I).

14. "Debtor" or "Debtors" shall mean the individual EMANUEL GONZALEZ NIEVES

15. "Effective Date of the Plan" shall mean thirty (30) days after the order of confirmation of the plan, becomes a final order and shall b e the date on which there shall be made all cash payments required by the Plan.

16. "Estate" shall mean the property owned by the Debtor that comprises the Chapter 12 estate of the Debtor in the above-captioned Chapter 12 proceeding.

17. "Final Order" shall mean an Order of the Bankruptcy Court (or other court of appropriate jurisdiction) which shall not have been reversed, stayed, modified or amended and the time

to appeal from or to seek review or rehearing of such order shall have expired, and about which, no appeal or petition for review or rehearing or certiorari proceedings is pending, as a result of which such Order shall have become final according to Rule 8002 of the Rules of Bankruptcy Procedure, as such Rules may be amended from time to time.

18. "Lien" shall mean a mortgage, pledge, judgment lien, security interest, charging order, or other charge or encumbrance on Property as is effective under applicable law as of the Petition Date.

19. "Liquidation" shall mean the complete liquidation of the Property of Debtors' Estate, by a duly appointed trustee, according to the provisions of Chapter 7 of the Bankruptcy Code.

20. "Liquidation Analysis" shall mean the comparison of the current assets and liabilities of the Debtors, in order to determine the Liquidation Value of the Debtor's Property.

21. "Liquidation Value" shall mean the value that, any item of the Debtor's Property could be expected to bring during Liquidation.

22. "Order of Confirmation" shall mean the Order of the Bankruptcy Court confirming this Plan, pursuant to 11 U.S.C. § 1225.

23. "Person" shall mean any individual, corporation, partnership, association, Joint Stock Company, trust, unincorporated organization, government or any political subdivision thereof, or other entity.

24. "Petition Date" shall mean December 11, 2018 the date on which the Debtor filed this Voluntary Petition and he commenced the instant Chapter 12 proceedings.

25. "Priority Claim" shall mean any Allowed Claim, other than an Administrative Expense Claim or Priority Tax Claim, to the extent entitled to priority in payment under 11 U.S.C. Section 507(a).

26. "Priority Creditor" shall mean any Creditor that is the holder of a Priority Claim.

27. "Priority Tax Claim" shall mean any Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507 (a) (8).

28. "Priority Wage Claim" shall mean Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507 (a) (3).

29. "Property" shall mean the property of the Estate, which shall be administered by the Debtor or the Chapter 12 Trustee.

30. "Pro Rata" shall mean in the same proportion that a Claim or Interest in a given Class bears to the aggregate amount of all Claims (including disputed Claim until allowed or disallowed) or the aggregate number of all Interest in such Class.

31. "Secured Claim" shall mean a Claim, the holder of which is vested with a perfected, non voidable Lien on Property in which the Debtors have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or other applicable non bankruptcy law, and is duly established in this case, to the extent of the value of such holder's interest in the Debtor's interest in such Property, as determined according to 11 U.S.C. Section 506.

32. "Secured Creditor" shall mean a Creditor who has a Secured Claim.

33. "Trustee" shall mean the standing Chapter 12 Trustee, Jose R. Carrion Morales, Esq.

34. "Unsecured Claim" shall mean a Claim, which is other than an Administrative Expense Claim, a Secured Claim or a Priority Claim (including a Priority Tax Claim or a Priority Wage Claim), including any Claim specified in 11 U.S.C. Sections 502 (g), 502 (h) or 502 (I).

35. "Unsecured Creditor" shall mean a creditor that is a holder of an Allowed General Unsecured Claim.

36. "Vesting of Property" Upon full consummation of the plan, all of the property of the Chapter 12 Estate shall vest on the Debtors.

37. "Voluntary Petition" shall mean the voluntary Petition for Relief filed by the Debtor on the Petition Date.

## ARTICLE II
## ASSETS AND LIABILITIES AS OF PETITION DATE

### A. ASSETS

| ASSET | VALUE |
|---|---|
| 1.5 cda. Located at Rd. 453 Km 1.3 in Guajataca Ward in Quebradillas PR | $1,500 |
| 1.0 cda.  Located at Rd. 453 Km 1.3 in Guajataca Ward in Quebradillas PR | $1,000 |
| 6.0 cdas.  Located at Rd. 453 Km 1.3 in Guajataca Ward in Quebradillas PR | $6,000 |
| Dairy Farm with milking facilities located at    Rd. 453 Km 1.3 in Guajataca Ward in Quebradillas PR composed of : <br> - Lot of 12 cdas. Property 10,688 Registered on Page 88, Book 197 of the Registry of Property of Quebradillas <br> - Lot of 900 sq. mts. . Property 8,979 Registered on Page 245, Book 168 of the Registry of Property of Quebradillas <br> - Lot of 13.5 cdas. Property 3,566 Registered on Page 199, Book 79 of the Registry of Property of Quebradillas | $125,125 |
| Two Story Residence of 4 bedrooms and 2 bathrooms Located at Rd. 453, Km. 1.7 | $38,400 |
| Pontiac Grand Prix (year 1993) | $1,000 |
| 1986 Ford Tractor Model 6600 | $5,000 |
| Household Goods | $2,300 |
| Electronics (TV Cellphone etc.) | $500 |
| Clothing | $500 |
| Jewelry | $200 |
| Cash | $300 |
| BPPR Checking Acc. | $100 |
| Deposits in Utilities | $250 |
| Milk Quota 10,000 Liters @ $13.50 per liter | $135,000 |
| 4 – 1 birth heifers @ $1,800 each | $7,200 |
| 5 – 2 births cows @$1,500 each | $7,500 |

| | |
|---|---|
| 13– 3 births cows @$1,000 each | $13,000 |
| 6 heifers (6 months old) @$200 each | $1,200 |
| 8 heifers (8 months old) @$800 each | $6,400 |
| 1 Milk Tank 6,100 Liters | $4,000 |
| Milk Cooling System | $200 |
| 8 Milk Extraction Machines @ $300 each | $2,400 |
| Electric Generator | $400 |
| Water Pump | $3000 |
| Water Heater | $400 |
| COW Feed | $500 |
| Chemicals | $200 |
| Fertilizers | $100 |
| **TOTALS** | $368,675 |

Debtor's main assets are the Bi-Weekly Milk Quota of 10,000 liters as recognized by ORIL

(Oficina Reglamentación de la Industria Lechera) which is valued at $13.50 ($13.50 per liter)

and Debtor's dairy farm of approximately 26 cuerdas located at Located at Rd. 453 Km 1.3 in

Guajataca Ward, Quebradillas PR that was appraised for $46,300.00 on December 2018.

Regarding the Dairy Farm appraisals, Secured Creditor BPPR submitted their appraisals on

May 9, 2019 stating that the properties were appraised on February 2018 in the amount of

$202,000. To reconcile BPPR's and Debtor's appraisals, the Debtor now proposes to pay and

value the three (3) properties that compromise the Dairy Farm in the amount of $125,125.00.

The Debtor also owns one (1) residential property located at Rd. 453, Km. 1.7 in Quebradillas

PR appraised for $38,400.00 on December 2018.The Debtor owes secured creditor **Banco**

**Popular de Puerto Rico** the total amount of $882,948.15 (as per Claim No. 7). This claim is

secured by Debtor's real properties dedicated to operation of the farm and with a first rank lien

over 10,000 liters of Milk Quota. Liquidation Analysis enclosed as **EXHIBIT 1.**

**B. LIABILITIES**

The Debtor owes **BANCO POPULAR DE PUERTO RICO** as the main creditor in the

total amount of $882,948.15 (as per Claim No. 7). The priority creditors are estimated in the

amount of $12,368.23 for the IRS (Claim No. 1). The unsecured creditors will receive the present

value of $42,301.00 plus interest at 4.00% per year (which represents present value of $3,000.00)

as recommended by the Chapter 12 Trustee.


# ARTICLE III
# DESIGNATION OF CLAIMS AND INTEREST


## A. DESIGNATION OF CLAIMS

The Plan divides the creditors into six (6) classes. The classes of creditors are as follow:

### 1. CLASS 1 – TRUSTEE EXPENSES

Class 1 shall consist of the Chapter 12 Trustee statutory commission

computed pursuant to 28 U.S.C. § 586 (e).


### 2. CLASS 2 – ADMINISTRATIVE EXPENSES

Shall consist of Allowed Administrative Expense Claims, as provided under

Section 503 of the Code, including but not limited to fees and expenses of Debtors'

counsel and other professionals as may be allowed by the Bankruptcy Court upon

application therefore and after notice and hearing according to the Bankruptcy Code

and Rules, plus any unpaid taxes or fees accrued since petition date and cost accrued

since the petition date.


### 3. CLASS 3 –BANCO POPULAR DE PUERTO RICO ("BPPR")

BANCO POPULAR DE PUERTO RICO ("BPPR") is owed $882,948.15

(Claim No. 7). This debt corresponds to a commercial loan secured with a first rank

lien over debtor's by-weekly milk quota of 10,000 liters as recognized by the ORIL (Oficina de Reglamentacion de la Industria Lechera) and with Debtor's real properties dedicated to the dairy farm operations located at Rd. 453 Km 1.3 in Guajataca Ward in Quebradillas PR composed of:

- Lot of 12 cdas. Property 10,688 Registered on Page 88, Book 197 of the Registry of Property of Quebradillas with a value of $31,000.00

- Lot of 900 sq. mts. Property 8,979 Registered on Page 245, Book 168 of the Registry of Property of Quebradillas with a value of $7,000

- Lot of 13.5 cdas. Property 3,566 Registered on Page 199, Book 79 of the Registry of Property of Quebradillas with a value of $87,125.00

The value of the milk quota is $13.50 per liter for a total amount of $135,000.00 and the total value of the real properties is $125,125.00. The value of the collaterals that secure claim numbered 7 is is $260,125.00. BPPR filed claim numbered 7 in the amount of $882,948.15.

The Debtor will retain the Milk Quota of 10,000 liters valued at $135,000.00 and the Lot of Land of 13.5 identified as *"Property 3,566 Registered on Page 199, Book 79 of the Registry of Property of Quebradillas"* with a value of $87,125.00 for a total amount to be paid to BPPR as value of Collaterals in the amount of $222,125.00. The remaining two real properties identified as "*Property 8,979 Registered on Page 245, Book 168 of the Registry of Property of Quebradillas*" with a value of $7,000 and "*Property 10,688 Registered on Page 88, Book 197 of the Registry of Property of Quebradillas"* with a value of $31,000.00 will not be retained by the Debtor and therefore with the Confirmation Order the Stay will be

lifted in favor of Banco Popular de Puerto Rico so that BPPR can foreclose these two (2) properties. BPPR will be able to file an Unsecured Claim after foreclosing these two (2) properties regarding any deficiency that results after the foreclosure of the properties  foreclosure.

BPPR will be paid the value of the collaterals which is $222,125.00, the remaining amount of $632,823.15 will be paid according to the General Unsecured Creditors Class of this Plan. The amount of $632,823.15 is used in this Plan as the total maximun amount for BPPR in the Unsecured Creditors because it makes the assumption that the foreclosure will produce only $38,000.00 to  BPPR, which is the value that the Debtor gives to the properties to be foreclosed. The Debtor values the two (2) properties "surrendered" or to be foreclosed by BPPR in the amount of $38,000.00 while BPPR values them at $62,000.00.


4. **CLASS 4 –    FONDO DE INNOVACION PARA EL DESARROLLO AGRICOLA DE PUERTO RICO ("FIDA")**

This Creditor filed claim numbered 10 in the total amount of $139,552.60 and the whole amount is claimed as secured. This Claim is for a credit line secured over two-story residence of 4 bedrooms and 2 bathrooms located at Rd. 453, Km. 1.7 in Quebradillas PR. This property was appraised for $38,400.00 on December 2018. FIDA will be paid the value of the collateral which is $38,400.00, the remaining amount of  $101,152.60 will be paid according to the General Unsecured Creditors Class of this Plan.

5. **CLASS 5 – FEDERACION DE ASOCIACIONES PECUARIAS ("FEDERACION")**

This creditor filed Claim numbered 2 in the total amount of $14,014.47. The amount of $14,014.47 was claimed as secured with a second rank lien over debtor's milk quota. The collateral for this claim is a 2nd Rank Lien over Debtor's 10,000 liters of milk quota, which are securing BPPR Claim 7 in the amount of $882,948.15 but are valued at $135,000.00. Said property that serves as collateral has no equity available to pay Federacion's claim as secured, therefore he complete amount of $14,014.47 will be paid as unsecured debt in the General Unsecured Creditor's Class (CLASS 6).

6. **CLASS 6 – GENERAL UNSECURED CREDITORS**

The General Unsecured Creditors Class consists of the following: creditors that have been listed by the Debtors as unsecured creditors, claims that have been filed as unsecured, claims that have been filed as secured but due to the value of collateral are not fully secured, and claims that are partially priority and partially unsecured. The total amounts General Unsecured Creditors that will participate in this class are $782,646.07. These creditors will receive a total amount of principal of $42,301.00 plus interest at a 4% interest rate The General Unsecured Creditors will be paid the equivalent of the Liquidation Value up to $42,301.00 and they will be paid after the Chapter 12 Trustee has paid all Priority Creditors. The General Unsecured Creditors will receive 5.40% of the principal owed to them.

7. **PAYMENT OF UNSECURED PRIORITY CLAIMS**

The Unsecured Priority Claims debt to this date is $12,368.23 for the IRS (Claim No. 1)

### ARTICLE IV
### TREATMENT FOR CLASSES OF CLAIMS AND INTEREST

## CLASS 1 – TRUSTEES EXPENSES

The Chapter 12 trustee shall receive and retain as the trustee's percentage fee under this plan an amount equal to ten percent (10%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount not to exceed $450,000.00, three percent (3%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount higher than the $450,000.01 but in excess of $1,000,000.00 and reasonable compensation not to exceed three percent (3%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount that exceeds the before mentioned amount of $1,000,000.00.

## CLASS 2 – ADMINISTRATIVE EXPENSES

This class will consist of Allowed Administrative Expense Claims, as provided under Section 503 of the Code. This class shall be paid by the Chapter 12 Trustee, in cash and in full as soon as practicable, on the later of (a) the Effective Date or (b) during the first year following the confirmation of the plan. The Chapter 12 trustee will make these payments.

## CLASS 3 – BANCO POPULAR DE PUERTO RICO ("BPPR")

BANCO POPULAR DE PUERTO RICO ("BPPR") is owed $882,948.15 (Claim No. 7). This debt corresponds to a commercial loan secured with a first rank lien over debtor's by-weekly

milk quota of 10,000 liters as recognized by the ORIL (Oficina de Reglamentacion de la Industria Lechera) and with Debtor's real properties dedicated to the dairy farm operations located at Rd. 453 Km 1.3 in Guajataca Ward in Quebradillas PR composed of:

- Lot of 12 cdas. Property 10,688 Registered on Page 88, Book 197 of the Registry of Property of Quebradillas with a value of $31,000.00

- Lot of 900 sq. mts. Property 8,979 Registered on Page 245, Book 168 of the Registry of Property of Quebradillas with a value of $7,000

- Lot of 13.5 cdas. Property 3,566 Registered on Page 199, Book 79 of the Registry of Property of Quebradillas with a value of $87,125.00

The value of the milk quota is $13.50 per liter for a total amount of $135,000.00 and the total value of the real properties is $125,125.00. The value of the collaterals which secure claim 7 is  $260,125.00. BPPR filed claim numbered 7 in the amount of $882,948.15.

The Debtor will retain the Milk Quota of 10,000 liters valued at $135,000.00 and the Lot of Land of 13.5 identified as *"Property 3,566 Registered on Page 199, Book 79 of the Registry of Property of Quebradillas"* with a value of $87,125.00 for a total amount to be paid to BPPR as value of Collaterals in the amount of $222,125.00. The remaining two real properties identified as *"Property 8,979 Registered on Page 245, Book 168 of the Registry of Property of Quebradillas"* with a value of $7,000  and *"Property 10,688 Registered on Page 88, Book 197 of the Registry of Property of Quebradillas"* with a value of $31,000.00 will not be retained by the Debtor and therefore with the Confirmation Order the Stay will be lifted in favor of Banco Popular de Puerto Rico regarding theses two properties so that BPPR can foreclose these two (2) properties. BPPR will be able to file an Unsecured Claim after foreclosing these two (2) properties regarding any deficiency that results after the foreclosure of the properties  foreclosure.

BPPR will be paid the value of the collaterals which is $222,125.00, the remaining amount of $632,823.15 will be paid according to the General Unsecured Creditors Class of this Plan. The amount of $632,823.15 is used in this Plan as the total maximun amount for BPPR in the Unsecured Creditors because it makes the assumption that the foreclosure will produce only $38,000.00 to  BPPR, which is the value that the Debtor gives to the properties to be foreclosed. The Debtor values the two (2) properties "surrendered" or to be foreclosed by BPPR in the amount of $38,000.00 while BPPR values them at $62,000.00. Appraisals included as **EXHIBIT 2** (appraisals provided by BPPR at Docket No. 44 in Objection to Confirmation filed by BPPR on May 9, 2019)

**Debt Balance Restructuring Upon Confirmation** – On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full.

The Debtor will pay the value of collateral $225,125.00 as stated herein:

The total term will be 11 years and 10 months (142 months total) as follows:

For the first 60 months this creditor will receive $1,500.00 monthly from the Chapter 12 Trustee. This payment includes interest at 5.75% during this term. After the 60 months terms have elapsed the Debtor will owe and estimate amount of $195,920.63. Months 61 through 142: These remaining 82 months the Debtor will pay BPPR the amount of $3,000 monthly directly to BPPR for 81 months and a last payment of $1,858.88 on the last month (month 82). The payment will be made by direct debits from milk sales to the milk processing plant (Suiza Dairy Corp, or any other

plant that the Debtor sells the raw milk in said moment). The interest rate for these last 82 months will be 6.75%. Amortization Schedule for BPPR included herein as **EXHIBIT 3.**

Notwithstanding the foregoing BPPR's legal and equitable rights and interests under the loans and ancillary documents over personal real property remain unchanged except as specifically modified under this plan.

## ADDITIONAL CLAUSES THAT APPLY TO BPPR

If at any moment, the Debtor obtains funds to pay in a lump sum the amounts provided under this Plan, there will be no penalties for such pre-payment. Regarding the security agreements over personal and real property, this creditor will retain unaltered the legal and contractual rights over the properties serving as collateral until full payment of the secured amount as detailed in the plan is made. The collateral includes the real properties and personal properties, specifically the three (3) real properties mentioned above and the total milk quota of 10,000 liters.

The payments proposed derive from the milk production proceeds remitted to this creditor from Suiza Dairy Corp. If at any moment the Debtor sells the milk production to any other milk processing plant, then this Plan is deemed modify so that this "new processing plant" can deduct the direct payments. Any additional amount due to this creditor in excess of the secured amounts ($225,125.00) as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within Class 6 of the Plan (GENERAL UNSECURED CREDITORS).

If the Debtor do not comply with two consecutive payments as stated in this Plan, the Automatic Stay will be lifted in favor of BPPR.

Any legal "questionnaire", "environmental questionnaire", assessment, visit or inspection will be completed/allowed by the Debtor in order to maintain compliance with Federal, or Local

regulations to which they or the creditor BPPR, are subject to. All property taxes due on BPPR collateral will be paid by the Debtor.

The Debtor will maintain all permits for the operation of the dairy farm up to date, including ORIL, Health Department, Municipality, Dept. of Agriculture of Puerto Rico, or any other as the same may be needed to operate the Dairy Farm.

## LOAN DOCUMENTS – UCC's – MORTAGES AND NOTES

Creditor BPPR will retain all the liens it has over Debtor's real properties and Debtor's personal properties until all payments as per this Chapter 12 Plan are made.

The Debtor acknowledges that if at any moment during the terms of 142 months mentioned above any document such as but not limited to: Mortgage Notes or Mortgage Deed, Uniform Commercial Code "UCC" Financing Statement, Lien in the Milk Industry Regulation Office "ORIL", or at any other related document has to be modified, amended, executed and/or supplemented, the Debtor will satisfy the cost of the document preparation and presentation included fees and/or taxes, and the Debtor will sign and execute said documents as per common and accepted business practices.

**DISMISSAL CLAUSE** The Debtor further acknowledges that if this case is dismissed the full amount claimed in Claim Numbered 7 will become due immediately. If this case is dismissed the full amount of $882,948.15 will be owed to BPPR, pursuant to the original terms and covenants of said loans including but not limited to the default interest rates, attorneys' fees etc.

## CLASS 4 – FONDO DE INNOVACION PARA EL DESARROLLO AGRICOLA DE PUERTO RICO ("FIDA")

This Creditor filed claim numbered 10 in the total amount of $139,552.60 and the whole amount is claimed as secured. This Claim is for a credit line secured over two-story residence of 4 bedrooms and 2 bathrooms located at Rd. 453, Km. 1.7 in Quebradillas PR. This property was appraised for $38,400.00 on December 2018. FIDA will be paid the value of the collaterals which is $38,400.00, the remaining amount of $101,152.60 will be paid according to the General Unsecured Creditors Class of this Plan. Appraisal included as **EXHIBIT 4.**

**Debt Balance Restructuring Upon Confirmation** – On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full.

The Debtor will pay the value of collateral $38,400 as stated herein:

The total term will be 10 years (120 months total) as follows:

For the first 60 months this creditor will receive $325.00 monthly from the Chapter 12 Trustee. This payment includes interest at 5.75% during this term. After the 60 months terms have elapsed the Debtor will owe and estimate amount of $28,625.32. Months 61 through 120: These 60 months the Debtor will pay FIDA the amount of $563.45 monthly directly. The payment will be made by direct debits from milk sales to the milk processing plant (Suiza Dairy Corp, or any other plant that the Debtor sells the raw milk in said moment). The interest rate for these 60 payments will be 6.75%. Amortization Schedule for FIDA included herein as **EXHIBIT 5.**

Notwithstanding the foregoing FIDA's legal and equitable rights and interests under the loans and ancillary documents over personal and/or real property remain unchanged except as specifically modified under this plan. This Creditor will retain all its liens until full payment pursuant to this Plan is made.

## CLASS 5 – FEDERACION DE ASOCIACIONES PECUARIAS ("FEDERACION")

This creditor filed Claim numbered 2 in the total amount of $14,014.47. The amount of $14,014.47 was claimed as secured with a second rank lien over debtor's milk quota. The collateral for this claim is a 2nd Rank Lien over Debtor's 10,000 liters of milk quota which are securing BPPR Claim 2 in the amount of $882,948.15 but are valued at $135,000.00. Said property that serves as collateral has no equity available to pay Federacion's claim as secured, therefore he complete amount of $14,014.47 will be paid as unsecured debt in the General Unsecured Creditor's Class (CLASS 6).

## CLASS 6 – GENERAL UNSECURED CREDITORS

The General Unsecured Creditors Class consists of the following: creditors that have been listed by the Debtor as unsecured creditors, claims that have been filed as unsecured, claims that have been filed as secured but due to the value of collateral are not fully secured, and claims that are partially priority and partially unsecured. The total amounts General Unsecured Creditors that will participate in this class are $782,646.07. These creditors will receive a total amount of principal of $42,301.00 plus interest at a 4% interest rate The General Unsecured Creditors will be paid the equivalent of the Liquidation Value up to $42,301.00 and they will be paid after the

Chapter 12 Trustee has paid all Priority Creditors. The General Unsecured Creditors will receive 5.40% of the principal owed to them.

The General Unsecured Creditors that will receive distribution are the ones that filed claims as follows:

| Creditor | Claimed/Listed | Amount |
|---|---|---|
| BPPR | Deficiency Claim 7 | $632,823.15 |
| FIDA | Deficiency Claim 10 | $101,152.60 |
| Federacion Asoc. Pecuarias | Deficiency Claim 2 | $14,014.47 |
| IRS | Unsecured Portion of Claim 1 | $13,215.42 |
| Coop A/C San Rafael | Claim 3 | $3,204.21 |
| Coop A/C San Rafae1 | Claim 4 | $15,066.21 |
| Sates Ins Fund | Claim 6 | $99.00 |
| PYOD LLC | Claim 8 | $399.21 |
| PR Dept Of Labor | Claim 9 | $2,671.80 |
| **TOTAL** | | $782,646.07 |

### ARTICLE V
### PAYMENT OF UNSECURED PRIORITY CLAIMS
### UNDER 11 U.S.C. SECTION 507 (a) (8)

All allowed unsecured priority claims pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, will be paid as stated below.

The Unsecured Priority Claims debt to this date is in the total amount of $14,234.79, which are divided as follows: $12,368.23 for the IRS (Claim No. 1).

ASUME filed Claim No. 5 in the amount of $1,866.56 but it withdrew the Claim as per Motion at Docket No. 53., therefore there is no debt owed to this creditor.

All allowed unsecured priority claims, pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, shall be paid by the Chapter 12 Trustee plus the 4.00% interest commencing on the effective date and after the date of confirmation of the plan.

## FUNDING OF THE PLAN

The funds will be obtained from the Debtor's dairy farm operation on the basis of consecutive installments remitted weekly and directly from SUIZA DAIRY CORP. See Schedule Payments under the Plan of Reorganization.

## ARTICLE VI
## PENDING LITIGATION

NONE.

## ARTICLE VII
## MEANS OF EXECUTION OF THE PLAN AND FEASIBILITY

The Debtor shall have sufficient funds to make all payments then due under this Plan. The funds will be obtained from Debtor's dairy farm operation. A set of business projections, will be filed within 14 days from filing of this Plan. On the Consummation Date of the plan, the operation of the named business, all estate assets and allowed claims and valid liens, as set forth in the plan, shall be and become the general responsibility of the reorganized Debtor, which shall thereafter have the responsibility for the management, control and administration thereof. Management of Debtors' affairs, collection of moneys and distribution to creditors, will be under the control and supervision of the reorganized debtor, which will assume the same role the debtor in possession have assume through this reorganization process.

## ARTICLE VIII
## DISCHARGE OF CLAIMS

Once the Debtor has complete all payments in accordance to this Plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was

filed, but only to the extent provided for by the plan) have been paid, other than payments to holders of allowed claims provided for under 11 USC 1222 (b)(5) or 11 USC 1222 (b)(9) unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided for by the plan allowed under 11 USC 503 or disallowed under 11 USC 502 of this title, except any debt: provided for under 11 USC 1222 (b)(5) or 11 USC 1222 (b)(9), such as BPPR, or of the kind specified in 11 USC 523 (a). The Discharge shall be granted once the Debtors have complied with the requirements for a Chapter 12 Discharge as set forth in 11 USC 1228.

## ARTICLE IX
## OBJECTIONS TO CLAIMS

The Debtor, the trustee, both at their option, and upon order of the Bankruptcy Court, if requested, may file an objection to any claim as to its validity or amount before the closing of the case. If an objection is made, payment to such claimants will be made only after the entry of a final order by the Court allowing such claim and in accordance with the provisions of the Plan governing such class to which such claims belongs.

Notwithstanding the Foregoing, Debtors hereby accept and acknowledge that neither Debtors nor their Estate have any objection as to the proof of claims filed by BPPR nor to the supporting documents thereof.

The claim of any general unsecured creditor who fails to file a proof of claim or that files its claim after the fixed claims bar date be disallowed by confirmation hearing.

## ARTICLE X
## EXECUTORY CONTRACTS

Except as stated herein, Debtor assume all unexpired leases and executory contracts to which they a party and which have not been expressly rejected pursuant to 11 U.S.C. Section

365(a). Specifically, Debtor have assumed throughout the bankruptcy proceedings the following

contracts:

SUIZA DAIRY INC -  Milk Production Contract.

PREPA (Puerto Rico Electric Power Authority)

AAA (Autoridad de Acueductos y Alcantarillados)


### ARTICLE X1
### PROVISIONS FOR THE MODIFICATION OF THE PLAN

The Debtors may propose amendments or modifications of this Plan at any time prior to its

confirmation pursuant to 11 U.S.C. 1223. After confirmation of the Plan, the Reorganized Debtors

may, with the approval of the Court and as long as it does not adversely affect the interest of the

creditors, remedy any defect or omission, in such manner as may be necessary to carry out the

purposes and effects of the same.


### ARTICLE XII
### CLOSING OF THE CASE

At such time as the case has been fully consummated, this case shall be closed. In order for

the case to be close, the trustee shall file a final report and account showing that the case has been

fully administered and the Plan has been fully consummated. The Court may conduct a hearing

upon application thereof and after notice to all creditors and parties in interest. Thereafter an order

approving the trustee's report and closing of the case shall be entered.


### ARTICLE XIII
### COMPLIANCE WITH LAWS AND GOOD FAITH

Debtor believes that the plan complies with all provisions of chapter 12 and any other

applicable provision of the Bankruptcy Code, that the plan has been proposed in good faith and

not by any means forbidden by law, and that all fees, charges or amounts required to be paid before confirmation have been paid.

## ARTICLE XIV
## CHAPTER 7 COMPARISON

Based upon the values of the Debtor's assets and the amount of secured and unsecured claims as set forth in debtor's chapter 12 statement, the Debtor believes that the value, as of the effective date of the plan, of property to be distributed under the plan on account of each estate of the Debtor was to be liquidated under Chapter 7 of the Bankruptcy Code. Refer to Liquidation Analysis enclosed as **EXHIBIT 1.**

## ARTICLE XV
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by law, rule or statute, or by this Plan, to enable the Debtor to consummate any and all proceedings which they may bring before or after the entry of the order of confirmation, in order to carry out the provisions of this Plan, specifically meaning until payment of all creditors as listed in the Treatment of Classes, Article IV, supra.

### EFFECTIVE DATE OF THE PLAN

The "Effective Date of the Plan" will be thirty (30) days after the order of confirmation of the plan, becomes a final order and shall be the date on which there shall be made all cash payments required by the Plan.

**RESPECTFULLY SUMITTED,**

In Mayagüez, Puerto Rico, this July 1, 2019

*/s/ EMANUEL GONZALEZ NIEVES*

**ATTORNEY FOR DEBTOR**
**/s/ Homel A. Mercado Justiniano**
**USDC- PR - 229705**
**Calle Ramírez Silva # 8**
**Ensanche Martínez**
**Mayagüez, PR 00680**
**Tel: (787) 831-3577**
**Fax: (787) 805-7350**
**Email: hmjlaw2@gmail.com**
**hmjlaw@yahoo.com**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br>**EMANUEL GONZALEZ NIEVES**<br><br>XXX – XX – 7138<br><br>DEBTORS | CASE NO. 18-07215-BKT12<br><br>CHAPTER 12 |

**AMENDED CHAPTER 12 PLAN DATED JULY 1, 2019**

**PAYMENT PROPOSAL TO:**

**CLASS 3 – BANCO POPULAR DE PUERTO RICO ("BPPR")**

BANCO POPULAR DE PUERTO RICO ("BPPR") is owed $882,948.15 (Claim No. 7). This debt corresponds to a commercial loan secured with a first rank lien over debtor's by-weekly milk quota of 10,000 liters as recognized by the ORIL (Oficina de Reglamentacion de la Industria Lechera) and with Debtor's real properties dedicated to the dairy farm operations located at Rd. 453 Km 1.3 in Guajataca Ward in Quebradillas PR composed of:

- Lot of 12 cdas. Property 10,688 Registered on Page 88, Book 197 of the Registry of Property of Quebradillas with a value of $31,000.00

- Lot of 900 sq. mts. Property 8,979 Registered on Page 245, Book 168 of the Registry of Property of Quebradillas with a value of $7,000

- Lot of 13.5 cdas. Property 3,566 Registered on Page 199, Book 79 of the Registry of Property of Quebradillas with a value of $87,125.00

The value of the milk quota is $13.50 per liter for a total amount of $135,000.00 and the total value of the real properties is $125,125.00. The value of the collaterals which secure claim numbered 7 is $260,125.00. BPPR filed claim numbered 7 in the amount of $882,948.15.

The Debtor will retain the Milk Quota of 10,000 liters valued at $135,000.00 and the Lot of Land of 13.5 identified as *"Property 3,566 Registered on Page 199, Book 79 of the Registry of Property of Quebradillas"* with a value of $87,125.00 for a total amount to be paid to BPPR as value of Collaterals in the amount of $222,125.00. The remaining two real properties identified as *"Property 8,979 Registered on Page 245, Book 168 of the Registry of Property of Quebradillas"* with a value of $7,000 and *"Property 10,688 Registered on Page 88, Book 197 of the Registry of Property of Quebradillas"* with a value of $31,000.00 will not be retained by the Debtor and therefore with the Confirmation Order the Stay will be lifted in favor of Banco Popular de Puerto Rico regarding theses two properties so that BPPR can foreclose these two (2) properties. BPPR will be able to file an Unsecured Claim after foreclosing these two (2) properties regarding any deficiency that results after the foreclosure of the properties  foreclosure.

 BPPR will be paid the value of the collaterals which is $222,125.00, the remaining amount of $632,823.15 will be paid according to the General Unsecured Creditors Class of this Plan. The amount of $632,823.15 is used in this Plan as the total maximun amount for BPPR in the Unsecured Creditors because it makes the assumption that the foreclosure will produce only $38,000.00 to  BPPR, which is the value that the Debtor gives to the properties to be foreclosed. The Debtor values the two (2) properties "surrendered" or to be foreclosed by BPPR in the amount of $38,000.00 while BPPR values them at $62,000.00. Appraisals included as **EXHIBIT 2**

(appraisals provided by BPPR at Docket No. 44 in Objection to Confirmation filed by BPPR on May 9, 2019)

**Debt Balance Restructuring Upon Confirmation** – On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full.

The Debtor will pay the value of collateral $225,125.00 as stated herein:

The total term will be 11 years and 10 months (142 months total) as follows:

For the first 60 months this creditor will receive $1,500.00 monthly from the Chapter 12 Trustee. This payment includes interest at 5.75% during this term. After the 60 months terms have elapsed the Debtor will owe and estimate amount of $195,920.63. Months 61 through 142: These remaining 82 months the Debtor will pay BPPR the amount of $3,000 monthly directly to BPPR for 81 months and a last payment of $1,858.88 on the last month (month 82). The payment will be made by direct debits from milk sales to the milk processing plant (Suiza Dairy Corp, or any other plant that the Debtor sells the raw milk in said moment). The interest rate for these last 82 months will be 6.75%. Amortization Schedule for BPPR included herein as EXHIBIT 3.

Notwithstanding the foregoing BPPR's legal and equitable rights and interests under the loans and ancillary documents over personal real property remain unchanged except as specifically modified under this plan.

## ADDITIONAL CLAUSES THAT APPLY TO BPPR

If at any moment, the Debtor obtains funds to pay in a lump sum the amounts provided under this Plan, there will be no penalties for such pre-payment. Regarding the security agreements

over personal and real property, this creditor will retain unaltered the legal and contractual rights over the properties serving as collateral until full payment of the secured amount as detailed in the plan is made. The collateral includes the real properties and personal properties, specifically the three (3) real properties mentioned above and the total milk quota of 10,000 liters.

The payments proposed derive from the milk production proceeds remitted to this creditor from Suiza Dairy Corp. If at any moment the Debtor sells the milk production to any other milk processing plant, then this Plan is deemed modify so that this "new processing plant" can deduct the direct payments. Any additional amount due to this creditor in excess of the secured amounts ($225,125.00) as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within Class 6 of the Plan (GENERAL UNSECURED CREDITORS).

If the Debtor do not comply with two consecutive payments as stated in this Plan, the Automatic Stay will be lifted in favor of BPPR.

Any legal "questionnaire", "environmental questionnaire", assessment, visit or inspection will be completed/allowed by the Debtor in order to maintain compliance with Federal, or Local regulations to which they or the creditor BPPR, are subject to. All property taxes due on BPPR collateral will be paid by the Debtor.

The Debtor will maintain all permits for the operation of the dairy farm up to date, including ORIL, Health Department, Municipality, Dept. of Agriculture of Puerto Rico, or any other as the same may be needed to operate the Dairy Farm.


### LOAN DOCUMENTS – UCC's – MORTAGES AND NOTES

Creditor BPPR will retain all the liens it has over Debtor's real properties and Debtor's personal properties until all payments as per this Chapter 12 Plan are made.

The Debtor acknowledges that if at any moment during the terms of 142 months mentioned above any document such as but not limited to: Mortgage Notes or Mortgage Deed, Uniform Commercial Code "UCC" Financing Statement, Lien in the Milk Industry Regulation Office "ORIL", or at any other related document has to be modified, amended, executed and/or supplemented, the Debtor will satisfy the cost of the document preparation and presentation included fees and/or taxes, and the Debtor will sign and execute said documents as per common and accepted business practices.

**DISMISSAL CLAUSE** The Debtor further acknowledges that if this case is dismissed the full amount claimed in Claim Numbered 7 will become due immediately. If this case is dismissed the full amount of $882,948.15 will be owed to BPPR, pursuant to the original terms and covenants of said loans including but not limited to the default interest rates, attorneys' fees etc.

## CLASS 4 – FONDO DE INNOVACION PARA EL DESARROLLO AGRICOLA DE PUERTO RICO ("FIDA")

This Creditor filed claim numbered 10 in the total amount of $139,552.60 and the whole amount is claimed as secured. This Claim is for a credit line secured over two-story residence of 4 bedrooms and 2 bathrooms located at Rd. 453, Km. 1.7 in Quebradillas PR. This property was appraised for $38,400.00 on December 2018. FIDA will be paid the value of the collaterals which is $38,400.00, the remaining amount of $101,152.60 will be paid according to the General Unsecured Creditors Class of this Plan. Appraisal included as EXHIBIT 4.

**Debt Balance Restructuring Upon Confirmation** – On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of

the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full.

The Debtor will pay the value of collateral $38,400 as stated herein:

The total term will be 10 years (120 months total) as follows:

For the first 60 months this creditor will receive $325.00 monthly from the Chapter 12 Trustee. This payment includes interest at 5.75% during this term. After the 60 months terms have elapsed the Debtor will owe and estimate amount of $28,625.32. Months 61 through 120: These 60 months the Debtor will pay BPPR the amount of $563.45 monthly directly. The payment will be made by direct debits from milk sales to the milk processing plant (Suiza Dairy Corp, or any other plant that the Debtor sells the raw milk in said moment). The interest rate for these 60 payments will be 6.75%. Amortization Schedule for FIDA included herein as EXHIBIT 5.

Notwithstanding the foregoing BPPR's legal and equitable rights and interests under the loans and ancillary documents over personal and/or real property remain unchanged except as specifically modified under this plan.

**CLASS 5 – FEDERACION DE ASOCIACIONES PECUARIAS ("FEDERACION")**

This creditor filed Claim numbered 2 in the total amount of $14,014.47. The amount of $14,014.47 was claimed as secured with a second rank lien over debtor's milk quota. The collateral for this claim is a 2nd Rank Lien over Debtor's 10,000 liters of milk quota which are securing BPPR Claim 2 in the amount of $882,948.15 but are valued at $135,000.00. Said property that serves as collateral has no equity available to pay Federacion's claim as secured, therefore he

complete amount of $14,014.47 will be paid as unsecured debt in the General Unsecured Creditor's

Class (CLASS 6).

## SUMMARY OF PAYMENTS UNDER THE PLAN

| CREDITOR | MONTHLY PAYMENT MONTHS 1 – 60 | TOTAL PAID DURING LIFE OF THE PLAN |
|---|---|---|
| BPPR | $1,500 monthly x 60 months, through the chapter 12 Trustee. After Plan completion with the Chapter 12 Trustee. | $90,000.00 |
| FIDA | $325.00 X 60 months = $10,515 | $3,900 |
| UNSECURED CREDITORS | These creditors will receive a total amount of principal of $42,301.00 plus the amount of $3,000 in interest. The General Unsecured Creditors will be paid the equivalent of the Liquidation Analysis up to $45,301.00 These creditors will receive a "Pro-Rata" distribution as per Liquidation Value and they will be paid after the Chapter 12 Trustee has paid all Priority Creditors. | $45,301.00 |
| PRIORITY CREDITORS | IRS - $12,368.23 (Claim No. 1) + $1,500 interest = $13,868.23 | $13,868.23 |
| ESTIMATED PROFESSIONAL FEES | | $10,000.00 |
| TOTAL PAYMENT WITHOUT TRUSTEES FEES | | $163,069.23 |
| ESTIMATED TRUSTEES FEES | | $16,306.92 |
| TOTAL AMOUNT NEEDED | | $179,379.15 |
| ACTUAL PAYMENT THAT WILL BE MADE THROUGH CHAPTER 12 TRUSTEE.<br><br>(payments are computed to be paid in months, but the Debtors will make weekly payments because milk production is paid in bi-weekly payments) | $700.00 x 260 weeks (5 years) = $182,000 | $182,000 |

## SPECIAL PROVISIONS:

In order to facilitate the implementation of this Chapter 12 Plan, Debtor hereby agrees and authorizes that, from the net proceeds of the periodic milk liquidations between Debtor and the processing plant to which Debtor delivers its milk production, the processing plant, SUIZA DAIRY, CORP. ("Suiza") deducts from said net proceeds the amount of

-   $700.00 weekly for 260 straight weeks = $182,000.00

These payments will be delivered to  JOSE CARRIÓN (Chapter 12 Trustee), provided that the net proceeds of said liquidations reach said amount after making the deductions indicated above and any other provided for by any applicable law or made in the regular course of business of the processing plant, or as otherwise indicated herein.

These funds, together with any other funds provided by Debtor to the Chapter 12 Trustee, if any, as per the terms of the confirmed Chapter 12 Plan, will be distributed by the Trustee in accordance with the terms of the confirmed Chapter 12 plan.

The processing plant will also make the corresponding withholdings and the following payments:

1. None

The processing plant will make all the above withholdings from Debtor on a bi-weekly basis, as is the standard operating procedure.

As part of this Chapter 12 Plan, Debtor requests from the processing plant that all said monthly payments be processed by the processing plant within ten (10) working days after the end of each and every consecutive calendar month, commencing on the calendar month following the Effective Date of the Chapter 12 Plan.

It is understood that all amounts agreed to be deducted from Debtor and disbursed by the processing plant as herein indicated are subject to the essential condition that the net proceeds of the milk liquidations be sufficient to cover the same after making such deductions provided by law and those expenses, costs and/or advances made and/or charged to Debtor by SUIZA DAIRY CORP, which will have priority over all other assignments of funds and/or requests for payments to third parties.

Once the Chapter 12 plan is confirmed by an order entered by the Bankruptcy Court that becomes final and unappealable, Debtor will give prompt written notice to the processing plant of the exact Effective Date as well as of any further change that may affect this procedure, including, but not limited to, (a) amendments to the Chapter 12 plan approved by the Court (b) the dismissal of the case (c) the conversion of this case to one under any other Chapter of the Bankruptcy Code and/or (d) the termination of Debtor's obligation to make payments to the Chapter 12 Trustee, to the Bank, or to any other party as provided for in the Chapter 12 Plan, or as directed by the Court.

Any assignments of funds to third parties to be deducted from Debtors' milk liquidations and paid through the processing plant, whether executed prior to the filing of the petition or afterwards, whether made under the provisions of the Civil Code of Puerto Rico or as mere requests for payments, are hereby cancelled and left without effect, unless and except as otherwise indicated below:

1.none

This Special Provisions Section constitutes an essential part of the Chapter 12 Plan.  Should there be any discrepancy between the contents of this Special Provisions Section and the rest of the Chapter 12 Plan, the contents of this Section will prevail.