# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 18 -07215-BKT12 |
| **EMANUEL GONZÁLEZ NIEVES** | |
| XXX- XX - 7138 | |
| Debtor | CHAPTER 12 |

## OPPOSITION TO MOTION TO DISMISS FILED BY BPPR
## ON JUNE 18, 2019 AT DOCKET NO. 58

TO THE HONORABLE COURT:

COMES NOW the Debtor, **EMANUEL GONZALEZ NIEVES** through the undersigned attorney and very respectfully set forth and pray:

1. On December 11, 2018, the Debtor **EMANUEL GONZALEZ NIEVES filed** a voluntary petition for relief under the provisions of 11 U.S.C. §1201 et. seq. numbered 18 – 07215-BKT12 and as of this date he has been managing his affairs and operating the Dairy Farm Business.

2. The Debtor operates a dairy farm under license as authorized by ORIL (Oficina Para la Reglamentación de la Industria Lechera) numbered 3468. The Debtor has total bi-weekly milk quota of 10,000 liters as authorized by the ORIL.

3. Debtor's dairy farms is located at: Carr. 453, KM 1.3, Guajataca Ward, Quebradillas PR 00678.

4. The complete milk quota of 10,000 liters is produced and sold together to SUIZA DAIRY CORP (Suiza).

5. On June 18, 2019 Secured Creditor, Banco Popular de Puerto Rico ("BPPR") filed a Motion to Dismiss or "MTD" (Docket No. 58). The main averments presented by

BPPR in said MTD are:  Request for Dismissal by a party pursuant to 11 U.S.C §1208 (c) (1), (2), and (3) ***A. Debtors have caused unreasonable delay that is prejudicial to creditors; and have failed to file a confirmable plan"; "B. Debtors are facing a continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation."***

6. In this Opposition to Motion to Dismiss, the debtor, Emanuel Gonzalez, will discuss both arguments raised by BPPR's in its MTD in the same order they were presented.

### *"A. Debtors have caused unreasonable delay that is prejudicial to creditors; and have failed to file a confirmable plan"*

7. BPPR claims that the Debtor has failed to file a confirmable Chapter 12 Plan within reasonable time stating that the Debtor, Emanuel Gonzalez, didn't filed his Plan within the 90 days provisions set on 11 U. S. C. §1221.

8. Creditor, BPPR fails to mention that after the Court granted an extension of time up to April 18, 2019 (Docket No. 32), the debtor filed his Plan within said period of time on April 17, 2019 (Docket No. 38).

9. Said Chapter 12 Plan Dated April 17, 2019 (Docket No. 38[1]) received an Unfavorable Report by the Chapter 12 Trustee (Docket No. 46). However, the Debtor has filed an Amended Plan Dated July 1, 2019 (Docket No. 62) and this Plan "Amended Plan" is only pending evidence that the Debtor is current with Domestic Support Obligations (DSO) payments in order to be favorably recommended.[2]

10. BPPR's argument that the Debtor, Emanuel Gonzalez, has failed to file a

---

1 This Plan was re-filed at Docket No. 40 because it had the wrong case number
2 In its Reports filed on July 4, 2019, the Chapter 12 Trustee, José Carrión Morales

confirmable plan is completely unfounded. The Debtor has filed one Plan on April 17, 2019 and this Plan was objected by BPPR. The Debtor tried to negotiate with creditor BPPR in order to reach a Stipulation with BPPR regarding the repayment and value of collaterals, but this was not possible. After verifying the Objection to the Plan filed BPPR (Docket No. 44) and BPPR's Motion to Dismiss "MTD" (Docket No. 58), the Debtor filed an Amended Plan Dated July 1, 2019 (Docket No. 62) that deals with the Objection to Confirmation and the MTD filed by BPPR.

11. Debtor's Amended Plan Dated July 1, 2019 (Docket No. 62) is a confirmable Plan that deals with the allegations stated by BPPR in its MTD. This Amended Plan surrenders collateral and increases payout to BPRR, increases payment to Unsecured Creditors and is feasible as per Debtors income.

### *"B. Debtors are facing a continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation"*

12. In its Motion to Dismiss, BPPR claims that the Debtor is suffering from continuing loss of the estate. BPPR quotes 11 U. S. C. §1208 © (9) and In re Fenske 96 BR 244 and therefore the case should be dismissed.

13. The information taken into consideration by BPPR and included in a table at page 5 of Docket No. 58 doesn't take into consideration Monthly Operating Reports for April and May 2019 and it doesn't take into consideration the investments that the Debtor has made in order to increase production and to be able to comply with Plan payments.

14. Debtor's Amended Plan Dated July 1, 2019 (Docket No. 62) proposes payments of $700 per week. The Debtor has been paying $250 per week to Banco Popular de Puerto Rico since January 2019 so basically the Debtor needs additional $450 per week to be able to comply with his Amended Chapter 12 Plan.

15. The additional $450 per week are already available if we compare two things, the
Net Income for six (6) months in the total amount of $6,572 and/or the investments
for cows and farm which total $33,900 for six (6) months.

16. If we add the net income and investments made during the last months, there is
sufficient income to comply with a weekly payment of $700.

17. Table summarizing MORs is included herein:

| Month | Average bi-weekly Milk Produced | Income | Expenses | Investment in cows and/or farm | Payment to BPPR | Net Income |
|---|---|---|---|---|---|---|
| December 2018 | 2,871 | $5,148.22 | $5,095.20 | | | $53.02 |
| January 2019 | 2,866 | $12,768.47 | $12,384.00 | $7,600.00 | $1,250 | $384.47 |
| February 2019 | 4,719 | $8,494.68 | $7,987.20 | $2,150.00 | $1,000 | $507.48 |
| March 2019 | 4,602 | $11,003.17 | $10,042.20 | $2,900.00 | $1,000 | $960.97 |
| April 2019 | 4,315 | $7,735.56 | $6,139.34 | 0 | $1,000 | $1,596.22 |
| May 2019 | 4,148 | $31,044.36 | $27,974.23 | $21,250.00 | $1,250 | $3,070.13 |
| TOTAL | | $76,194.46 | $69,622.17 | $33,900.00 | $5,500 | $6,572.29 |

18. In its Motion, BPPR discusses how the Dairy Industry in Puerto Rico was paying
the raw milk production to farmers. BPPR discusses that the Debtor is producing
45-50% of the milk quota but BPPR points out that only 42% is being paid at "first
level milk" and that if the Debtor were to increase production, he would fall on a
third level milk.

19. What BPPR mentioned above was correct for the month of up to May 2019
however, the Dairy Industry has returned to the system that pays raw milk based on
milk levels.  The latter means that currently (for the last two (2) bi-weekly periods)
the Dairy Industry has returned to paying all the first level milk (milk paid at $0.86
per liter) in the actual first level and it is in the 45% range, all other raw milk (the

ones that are paid at prices below $0.86 per liter) are paid in a second level and its price is currently averaging $0.40 per liter. This payment system tends to control over production and therefore decreases milk disposals. The latter is extremely important because the excess milk that is being produced is the one that decreases the income received by farmers; the bi-weekly period that ended on June 26, 2019 "first level milk" was paid at 45.43% @ $0.7523 per liter and "second level milk" was paid at 54.56% @ $0.33 per liter, milk decommissions were in the amount of 547,877 liters; the bi-weekly period that ended on June 26, 2019 "first level milk" was paid at 45.57% @ $0.7617 per liter and "second level milk" was paid at 54.42% @ $0.4044 per liter, milk decommissions were in the amount of 419,092 liters. What this system demonstrates is that as milk decommissions decrease there is less losses to the industry as a whole and there is a probability that in August 2019 when the school system begin to operate (usually purchases 400-500,000 liters) there will no milk discarded and the "first level milk" will be paid at the regulatory $0.82 per liter and the "second level milk" will be paid at 2-4 more cents per liter. See Summary from Liquidations from the Dairy Industry as **Exhibits 1 & 2**

20. The Debtor in this case has made extraordinary efforts to invest in the business in order to increase income. He has purchased milking heifers and made investments in fencing and cleaning in the farm in order to increase raw milk production. The Debtor has modified his Plan to surrender two (2) properties to BPPR and increase the payout to all creditors (including BPPR). The Debtor has even paid the DSO arrears in full prior to Plan confirmation.

21. The increase in income obtained by the Debtor is sufficient to comply with Plan payments. The Debtor has a confirmable Plan that will produce payments to all creditors, and it will produce interest and principal payments to BPPR.

22. The Debtor respectfully requests that this Honorable Court denies the Motion to Dismiss filed by Banco Popular de Puerto Rico on June 18, 2019 (Docket No. 58).

**WHEREFORE** the Debtor herein requests that this Honorable Court denies the Motion to Dismiss filed by Banco Popular de Puerto Rico on June 18, 2019 (Docket No. 58).

**RESPECTFULLY SUBMITTED.**

In Mayaguez, Puerto Rico, this July 15, 2019

## CERTIFICATE OF SERVICE

Notice of this MOTION has been electronically provided by the CM/ECF system to:  the **US Trustee** for the District of Puerto Rico, Monsita Lecaroz Ariibas, Esq. at ustpregion21.hr.ecf@usdoj.go; the Chapter 12 Trustee, Jose R. Carrión at newecfmail@ch13-pr.com; State Insurance Fund, Alejandro Suarez, Esq. at Alejandro.Suarez@cfse.gov.pr; COOP A/C San Rafael, Jaime Rodríguez Esq. at jrpcourtdocuments@gmail.com; ORIL, Edward Hill Esq. at ehill@hillgonzalezlaw.com; FIDA, Grace M Figueroa Esq., gmarief@hotmail.com; BPPR – Special Loans, Dagmar I Fernández, Esq. at df-law@outlook.com; and to Creditors and Parties that are not C/M ECF Participants as per attached master address list.

**/s/HOMEL MERCADO JUSTINIANO**
USDC- PR – 229705
Calle Ramírez Silva #8
Ensanche Martinez
Mayagüez, PR 00680-4714
Telephone: (787) 831-2577
Cell: (787) 364-3188
Fax: (787) 805- 7350
Email: hmjlaw2@gmail.com